UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| KARANVIR S.[1], <br><br>         Petitioner, <br><br>    v. <br><br> ORESTES CRUZ, <br><br>         Respondent. | No. 1:26-cv-00055-TLN-JDP <br><br> **ORDER** |

This matter is before the Court on Petitioner Karanvir S.'s ("Petitioner") Motion for Temporary Restraining Order ("TRO"). (ECF No. 2.) Respondent filed an opposition, waived oral argument, and stated the filing contained the "entirety" of Respondent's opposition to the TRO and any preliminary injunction.[2] (ECF No. 5.) Petitioner filed a reply. (ECF No. 9.) For

---

[1] As recommended by the Committee on Court Administration and Case Management of the Judicial Conference of the United States, the Court omits Petitioner's full name, using only his first name and last initials, to protect sensitive personal information. *See* Memorandum Re: Privacy Concern Regarding Social Security and Immigration Opinions, Committee on Court Administration and Case Management, Judicial Conference of the United States (May 1, 2018), https://www.uscourts.gov/sites/default/files/18-cv-l-suggestion_cacm_0.pdf. The Clerk of Court is directed to update the docket to reflect this change accordingly.

[2] Respondent argues that because Petitioner is detained at Mesa Verde, the appropriate

1

the reasons set forth below, Petitioner's Motion is GRANTED and the Court issues a preliminary injunction.

## I.     FACTUAL BACKGROUND[3]

Petitioner is a native and citizen of India.  (ECF No. 1 at 3.)  Petitioner entered the United States on January 19, 2023, without inspection near Lukeville, Arizona.  (*Id.*)  He was detained by immigration authorities and then released on his own recognizance under 8 U.S.C. § 1226 on January 30, 2023.  (*Id.*; ECF No. 1-2 at 8.)

On September 18, 2023, Petitioner filed an asylum application with the Executive Office for Immigration Review ("EOIR").  (ECF No. 1 at 4.)  Petitioner was granted employment authorization which is valid until March 28, 2029.  (*Id.*; ECF No. 1-2 at 35.)

Since his release from immigration detention, Petitioner has complied with all the conditions of his release, including check-ins with U.S. Immigration and Customs Enforcement ("ICE").  (ECF No. 1 at 5.)  Nevertheless, on October 3, 2025, Petitioner was detained and told he was being held without bond or hearing pursuant to *Matter of Yajure Hurtado*.  (*Id.*)  Petitioner is currently detained at the Mesa Verde ICE Processing Center.  (*Id.*)  He has been held for over three months without a custody determination hearing.  (*See id.*)

Petitioner now challenges the lawfulness of his civil detention. (*See* ECF Nos. 1, 2.)

## II.    STANDARD OF LAW

A preliminary injunction is an extraordinary remedy.  Courts consider whether a petitioner has established "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest."  *Winter v. Nat. Res. Def. Council, Inc.*,

---

respondent is Ron Murray in his official capacity as Warden of the Mesa Verde ICE Processing Facility. (ECF No. 5 at 2.)  Given this, Respondent moves to join Ron Murray as a required party under Federal Rule of Civil Procedure 19(a)(1)(A).  (*Id.*)  Petitioner does not contest this.  (ECF No. 9 at 4.)  Respondent's request is GRANTED.  *See Quispe v. Becerra*, No. 1:25-CV-2002 CSK, 2025 WL 3774570, at *8 (E.D. Cal. Dec. 31, 2025) (substituting Mesa Verde ICE Processing Center Warden with Warden California City Detention Facility).

[3]     Petitioner incorporates his Petition for Writ of Habeas Corpus.  (ECF No. 2-1 at 2.)  As such, the Court references both the Petition and the TRO throughout this order.

555 U.S. 7, 20 (2008).  Petitioner must "make a showing on all four prongs" of the *Winter* test. *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011).

In evaluating a petitioner's motion, a district court may weigh petitioner's showings on the *Winter* elements using a sliding-scale approach.  *Id.*  A stronger showing on the balance of the hardships may support issuing a preliminary injunction even where the petitioner shows that there are "serious questions on the merits . . . so long as the [petitioner] also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest."  *Id.*  Simply put, a petitioner must demonstrate, "that [if] serious questions going to the merits were raised [then] the balance of hardships [must] tip[ ] sharply" in petitioner's favor in order to succeed in a request for a preliminary injunction.  *Id.* at 1134–35.

**III.   ANALYSIS**

The Court considers each of the *Winter* elements with respect to Petitioner's motion.

A.   Likelihood of Success on the Merits

Petitioner has established a likelihood of success on his claims that his detention violates the Immigration and Nationality Act ("INA") and the Fifth Amendment Due Process Clause.[4]  The Court discusses each claim in turn.

*i.   Violation of the INA*

Petitioner has established a likelihood of success on his claim that his detention is unlawful under the INA.  (ECF No. 1 at 5–6.)  Under the INA, 8 U.S.C. § 1226(a) ("§ 1226(a)") "provides the general process for arresting and detaining [noncitizens] who are present in the United States and eligible for removal."  *Rodriguez Diaz v. Garland*, 53 F.4th 1189, 1196 (9th Cir. 2022).  Section 1226(a) provides the Government broad discretion whether to release or detain the individual and it provides several layers of review for an initial custody determination.

---

[4]   Given this, the Court does not examine Petitioner's additional claim that the retroactive application of *Yajure Hurtado* violates due process.  (ECF No. 1 at 5–6.)  Although, the Court notes that "the core holding of *Yajure Hurtado* cannot be squared with" numerous district court orders holding that noncitizens similarly situated to Petitioner are not applicants for admission subject to § 1225(b).  *Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713982, at *3 (C.D. Cal. Dec. 18, 2025); *see also Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *6 (E.D. Cal. Dec. 11, 2025).

*Id.* It also confers "an initial bond hearing before a neutral decisionmaker, the opportunity to be represented by counsel and to present evidence, the right to appeal, and the right to seek a new hearing when circumstances materially change." *Id.* at 1202.

Conversely, "applicants for admission" fall into one of two categories — either § 1225(b)(1) or § 1225(b)(2). *Jennings v. Rodriguez*, 583 U.S. 281, 287 (2018). Section 1225(b)(1) mandates detention during consideration of asylum applications while § 1225(b)(2) mandates detention during removal proceedings. *Id.* However, regardless of which section applies, "applicants for admission may be temporarily released on parole 'for urgent humanitarian reasons or significant public benefit.'" (*Id.* (citing 8 U.S.C. § 1182(d)(5)(A); 8 C.F.R. §§ 212.5(b), 235.3 (2017)).)

The parties seemingly agree that Petitioner was released by immigration authorities in 2023 under § 1226(a). (ECF No. 2-1 at 3; ECF No. 5 at 1 (noting Petitioner's release document cited § 1226).) However, while Petitioner asserts that § 1226(a) should control (ECF No. 2-1 at 2–3), Respondent argues that Petitioner is currently subject to § 1225(b)(1) because Petitioner "submitted an asylum application." (ECF No. 5 at 1 n.1.) Further, Respondent contends Petitioner is not a member of the class certified in *Bautista*. (*Id.* (citing *Maldonado Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3289861, at *11 (C.D. Cal. Nov. 20, 2025)).)[5] The Court agrees with Petitioner.

Respondent concedes the instant action is indistinguishable from this Court's prior order in regards to whether the appropriate statute authorizing detention is § 1225 or § 1226. (ECF No. 5 at 2 (citing *Morales-Flores v. Lyons*, No. 1:25-CV-01640-TLN-EFB, 2025 WL 3552841, at *6 (E.D. Cal. Dec. 11, 2025).) Moreover, Petitioner was released under § 1226(a) and Respondent has not meaningfully explained why Petitioner should now be subject to a separate detention statute. Given Respondent's concession and absent new argument or case law, this Court will not reconsider its position regarding § 1225 versus § 1226 under these circumstances.

---

[5]   *See Bautista v. Santacruz*, No. 5:25-CV-01873-SSS-BFM, 2025 WL 3713987, at *32 (C.D. Cal. Dec. 18, 2025) (Amended Order Consolidating the Court's Orders on Motion for Partial Summary Judgment, Class Certification, and Application for Reconsideration or Clarification).

Thus, Petitioner is not an applicant "seeking admission" subject to mandatory detention under § 1225. Petitioner is instead subject to § 1226(a) and is entitled to the process that statute requires, including a bond hearing at a minimum. Yet, Respondent has not provided any hearing to Petitioner. Accordingly, Petitioner is likely to succeed on the merits of his claim that Respondent has violated the INA and improperly subjected him to mandatory detention without a hearing.

### ii. Violation of Procedural Due Process

The Fifth Amendment prohibits government deprivation of an individual's life, liberty, or property without due process of law. U.S. Const. amend. V; *Hernandez v. Sessions*, 872 F.3d 976, 990 (9th Cir. 2017). The Due Process Clause applies to all "persons" within the borders of the United States, regardless of immigration status. *Zadvydas v. Davis*, 533 U.S. 678, 693 (2001). These due process rights extend to immigration proceedings and detention. *Id.* at 693–94.

Courts examine procedural due process claims in two steps: the first asks whether there exists a protected liberty interest under the Due Process Clause, and the second examines the procedures necessary to ensure any deprivation of that protected liberty interest accords with the Constitution. *See Kentucky Dep't of Corrections v. Thompson*, 490 U.S. 454, 460 (1989); *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972) ("Once it is determined that due process applies, the question remains what process is due.").

### a)  Liberty Interest

As for the first step, the Court finds Petitioner has established a protectable liberty interest. *See Rico-Tapia v. Smith*, No. CV 25-00379 SASP-KJM, 2025 WL 2950089, at *8 (D. Haw. Oct. 10, 2025) (noting "[e]ven where the revocation of a person's freedom is authorized by statute, that person may retain a protected liberty interest under the Due Process Clause"). "[T]he government's decision to release an individual from custody creates 'an implicit promise,' upon which that individual may rely, that their liberty 'will be revoked only if [they] fail[ ] to live up to the . . . conditions [of release]." *Pinchi v. Noem*, 792 F. Supp. 3d 1025, 1032 (N.D. Cal. July 24, 2025) (quoting *Morrissey*, 408 U.S. at 482) (modifications in original). "Accordingly, a noncitizen released from custody pending removal proceedings has a protected liberty interest in

5

remaining out of custody." *Salcedo Aceros v. Kaiser*, No. 25-CV-06924-EMC, 2025 WL 2637503, at *6 (N.D. Cal. Sept. 12, 2025). To determine whether an individual's conditional release rises to the level of a protected liberty interest, courts have "compar[ed] the specific conditional release in the case before them with the liberty interest in parole as characterized by *Morrissey*." *R.D.T.M. v. Wofford*, No. 1:25-cv-01141-KES-SKO, 2025 WL 2617255, at *3 (E.D. Cal. Sept 9, 2025).

Here, Petitioner gained a liberty interest in his continued freedom after he was released from custody on January 30, 2023. Under *Morrisey*, this release implied a promise that he would not be re-detained, during the pendency of his immigration proceedings, if he abided by the terms of his release. For over two and a half years, Petitioner asserts he complied with ICE check-ins (ECF No. 1 at 5.) Respondent does not dispute this. (*See generally* ECF No. 5.) Further, Respondent does not assert Petitioner violated any laws or has a criminal history. (*Id.*) During the period of his release, Petitioner built a life in the United States as part of a community. (ECF No. 2-1 at 4.) As this Court has found previously, along with many other courts in this district when confronted with similar circumstances, Petitioner has a clear interest in his continued freedom as he awaits the outcome of his immigration proceedings. *See, e.g.*, *Doe v. Becerra*, 787 F. Supp. 3d 1083, 1093 (E.D. Cal. 2025) (noting the Government's actions in allowing petitioner to remain in the community for over five years strengthened petitioner's liberty interest).

### b) Procedures Required

As to the second step — what procedures or process is due — the Court considers three factors: (1) "the private interest that will be affected by the official action;" (2) "the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards;" and (3) "the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *Mathews v. Eldridge*, 424 U.S. 319, 335 (1976). As set forth below, the Court finds Petitioner has established his due process rights were likely violated.

First, Petitioner has a substantial private interest in remaining free from detention. As discussed above, Petitioner was out of custody for over two and a half years and built a life as

part of his community. Despite that, Petitioner has now been detained without any notice or opportunity to be heard. He has been separated from his family and unable to work. (ECF No. 2-1 at 4.) Accordingly, this factor weighs in favor of finding Petitioner's private interest has been impacted by his detention. *See Manzanarez v. Bondi*, No. 1:25-CV-01536-DC-CKD (HC), 2025 WL 3247258, at *4 (E.D. Cal. Nov. 20, 2025) (finding similarly).

Second, the risk of erroneous deprivation is considerable given Petitioner has not received any hearing, either pre- or post-detention. Petitioner asserts that he complied with the conditions of his release. (ECF No. 1 at 5.) Indeed, Petitioner's compliance led to his detention as he was arrested at a routine ICE check-in. (*Id.*) Thus, the Court finds there is a serious likelihood Petitioner could be erroneously deprived of his liberty interest. Without any procedural safeguards to determine whether his detention was justifiable, the probative value of additional procedural safeguards is high. *R.D.T.M.*, 2025 WL 2617255, at *4.

Finally, the Government's interest is low, and the effort and cost required to provide Petitioner with procedural safeguards are minimal. *See Garcia v. Andrews*, No. 2:25-CV-01884-TLN-SCR, 2025 WL 1927596, at *5 (E.D. Cal. July 14, 2025). Where removal is not imminent under a final order of removal, "[t]he government has no legitimate interest in detaining individuals who have been determined not to be a danger to the community and whose appearance at future immigration proceedings can be reasonably ensured by [ ] bond or alternative conditions." *Hernandez*, 872 F.3d at 994; *see also R.D.T.M.*, 2025 WL 2617255, at *4 ("Civil immigration detention, which is nonpunitive in purpose and effect is justified when a noncitizen presents a risk of flight or danger to the community.") (cleaned up).

Here, Petitioner does not claim to have a final order of removal and Respondent does not claim otherwise. (*See generally* ECF Nos. 1, 2, 5.) Additionally, before releasing him in 2023, immigration authorities would have found that Petitioner was not a danger to the community, nor a flight risk, and Respondent does not argue any facts to alter such a finding. As stated above, Petitioner complied with the conditions of his release, thus, he was not a flight risk. Therefore, on this record, the Court cannot find any legitimate interest for Respondent to detain Petitioner at this stage.

Moreover, the cost and time of procedural safeguards are minimal here. Notice and custody determination hearings are routine processes for the Government. Indeed, these are the very processes owed to Petitioner under § 1226(a). Any delay in detention (if justified) for the time to provide notice and a hearing would be minimal. It would also be less of a fiscal and administrative burden for the Government to return Petitioner home to await a determination on his immigration proceedings than to continue to detain him. *See Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) ("[T]he Ninth Circuit has recognized that the costs to the public of immigration detention are staggering.").

On balance, this Court finds the *Mathews* factors demonstrate Petitioner was entitled to a hearing to determine whether detention was warranted. Accordingly, with respect to his procedural due process claim, Petitioner has shown he is likely to succeed on the merits.

### B.      Irreparable Harm

Petitioner has also established he will suffer irreparable harm in the absence of a preliminary injunction. The Ninth Circuit recognizes "irreparable harms imposed on anyone subject to immigration detention," including "subpar medical and psychiatric care in ICE detention facilities, the economic burdens imposed on detainees and their families as a result of detention, and the collateral harms to [family.]" *Hernandez*, 872 F.3d at 995. Such harm is present here. Without relief, Petitioner faces the prospect of significant additional time in detention and continued harm while he awaits a decision on his immigration case. Moreover, "[i]t is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012) (quoting *Elrod v. Burns*, 427 U.S. 347, 373 (1976)). Thus, Petitioner has sufficiently established irreparable harm.

### C.      Balance of Equities and Public Interest

As to the final two *Winter* factors, "[w]hen the government is a party, the analysis of the balance of the hardships and the public interest merge." *Nat'l Urban League v. Ross*, 484 F. Supp. 3d 802, 807 (N.D. Cal. 2020) (citing *Drakes Bay Oyster Co. v. Jewell*, 747 F.3d 1073, 1092 (9th Cir. 2014)). The Court finds these factors also favor Petitioner. First, the balance of equities tips decidedly in Petitioner's favor as the Government "cannot reasonably assert that it is harmed

in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).  Second, "it is always in the public interest to prevent the violation of a party's constitutional rights." *Melendres*, 695 F.3d at 1002. Moreover, "the Ninth Circuit has recognized that the costs to the public of immigration detention are staggering." *Diaz v. Kaiser*, No. 3:25-CV-05071, 2025 WL 1676854, at *3 (N.D. Cal. June 14, 2025) (internal citation omitted).  Any burden imposed by requiring Respondent to release Petitioner from unlawful custody and refrain from re-detention unless and until they comply with constitutionally required process is both *de minimis* and clearly outweighed by the substantial harm Petitioner will suffer if he continues to be detained.  In sum, these last two factors weigh in Petitioner's favor.

Therefore, the Court GRANTS Petitioner's motion, issues the preliminary injunction set forth below, and orders Petitioner's immediate release on the same terms as he was released prior to his detention.[6]  *See Yang v. Kaiser*, No. 2:25-cv-02205-DAD-AC, 2025 WL 2791778, at *11 (E.D. Cal. Aug. 20, 2025) (status quo ante is "the last uncontested status which preceded the pending controversy.").

### IV. CONCLUSION

Accordingly, IT IS HEREBY ORDERED:

1. Petitioner's Motion for Temporary Restraining Order (ECF No. 2), converted to a motion for preliminary injunction, is GRANTED.
2. Respondent must IMMEDIATELY RELEASE Petitioner KARANVIR S. from custody under the same conditions as he was released prior to his current detention.  Respondent shall not impose any additional restrictions on him, unless such restrictions are determined to be necessary at a future pre-deprivation/custody hearing.
3. Respondent is ENJOINED and RESTRAINED from re-arresting or re-detaining Petitioner absent compliance with constitutional protections, including seven-days' notice and a pre-

---

[6] Release is appropriate here, in the interest of justice, and necessary to avoid further irreparable harm, particularly as parties agree this case is indistinguishable from *Morales*, 2025 WL 3552841, and this Court's numerous orders granting the same relief.  *See, e.g.*, *Lida G.B. v. Albarran*, No. 1:25-CV-02061-TLN-CKD, 2026 WL 19104, at *6 (E.D. Cal. Jan. 3, 2026).

      deprivation hearing before a neutral fact-finder where: (a) Respondent shows material changed circumstances demonstrate a significant likelihood of Petitioner's removal in the reasonably foreseeable future, or (b) Respondent demonstrates by clear and convincing evidence that Petitioner poses a danger to the community or a flight risk. At any such hearing, Petitioner shall be allowed to have counsel present.

4. The bond requirement of Federal Rule of Civil Procedure 65(c) is waived. Courts regularly waive security in cases like this one. *See Diaz v. Brewer*, 656 F.3d 1008, 1015 (9th Cir. 2011).

5. The Clerk of Court is DIRECTED to update the docket to only list Petitioner's first name and last initials.

6. The Court GRANTS Respondent's request to join Ron Murray in his official capacity as Warden of the Mesa Verde ICE Processing Facility who is subject to this Order requiring release of Petitioner. The Clerk of Court is DIRECTED to update the docket accordingly.

7. This matter is referred back to the United States Magistrate Judge for further proceedings.

IT IS SO ORDERED.

Date: January 9, 2026

_____
TROY L. NUNLEY
CHIEF UNITED STATES DISTRICT JUDGE